## IN  THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NOTHERON NICKCORE CLARKE       :
      #355-199
      Petitioner                 :

      v.                      :     CIVIL ACTION NO. JFM-15-1900

WARDEN RICHARD D. DOVEY, et al.,   :
      Respondents

### MEMORANDUM

On June 26, 2015,[1] the Clerk received petitioner Notheron Nickcore Clarke's 28 U.S.C. §

2254 habeas corpus petition attacking his 2008 Maryland judgment of conviction in the Circuit

Court for Somerset County, Maryland, for armed robbery and related offenses.   ECF 1.

Respondents filed a response (ECF 5) and Clarke has filed a reply.  ECF 7.   The court finds no

need for an evidentiary hearing, *see* Rule 8(a), *Rules Governing Section 2254 Cases in the*

*United States District Courts*; *see also* 28 U.S.C. § 2254(e)(2), and for reasons set forth herein

shall dismiss the petition and decline to issue a certificate of appealability.

### Procedural History

Clarke was charged in the Circuit Court for Somerset County with armed robbery and

related offenses stemming from the armed robbery of a University of Maryland Eastern Shore

student, Andrew Grizzle, who identified Clarke as the person who robbed him at knife point on

March 26, 2008. ECF No. 5-1 and ECF No. 5-4 at pp. 2-4. Clarke was also charged with illegal

possession of a knife, which was recovered from him on March 27, 2008.  ECF No. 5-4 at p. 5.

The facts adduced at trial, as outlined by the Court of Special Appeals, follow.

---

[1] The timely petition is dated  May 25, 2015, and is deemed filed on that date. *See  Houston v. Lack*, 487 U.S. 266
(1988); *United States. v. Dorsey*, 988 F.Supp. 917, 919-20 (D. Md. 1998).

The testimony at trial revealed the following events.  On March 26, 2008, at 11:30 p.m., Andrew Grizzle, a University of Maryland Eastern Shore ("UMES") student, was walking from the campus library to his dormitory.  He passed by two men, who said to him, "Yo, stop." One of the men was wielding a knife and demanded Grizzle's money. Grizzle emptied his pockets and the only item of value with him Was his cellular telephone.  The man with the knife took the telephone.

Grizzle immediately reported the incident to campus security, and Officer Jerome Stanford of the UMES police responded.  Grizzle described the robbers to Officer Standford as two black males, one of them was darker in complexion and was wearing black sweat pants and a black hoodie; the other male had braids and scruffy facial hair, and was wearing a black hoodie and gray sweat pants.  Grizzle told the officer that the darker complected individual displayed the knife and robbed him while the other individual stood by.  After a description of the robbers was broadcast, the police performed a canvas of the area with negative results.  The case was turned over to Officer Standford's supervisor, Sergeant Ricky Johnson.

The following night, March 27, 2008, Sergeant Johnson conducted surveillance of the UMES campus looking for the robbery suspects.  Just after 11:00 p.m., Sergeant Johnson saw three men walking around campus.   He became suspicious because one of the men was carrying a baseball bat.  Sergeant Johnson approached the men and began talking to them.   He determined that they were not UMES students.  The men then started to move away from him; Sergeant Johnson told the one with the bat to put it down and told the others to keep their hands in view.   When the men failed to follow his instructions, Sergeant Johnson ordered them to the ground at gunpoint pending the arrival of back-up officers. He identified the men as appellant, Tony Smith, and Darren Whittington. Whittington was carrying the baseball bat.   Smith was wearing a gray hooded sweatshirt and had a scraggly beard. Appellant was darker complected and was wearing a dark shirt and pants.   During their detention, police conducted a patdown search of the three men. They recovered two folding knives, one from appellant and one from Smith.

Based on their description and behavior, Sergeant Johnson suspected the men were involved in the robbery of Grizzle.[2]  Accordingly, he requested officers to bring Grizzle to the scene where the men were being detained for possible identification. Grizzle was "very positive" in his identification of appellant as the individual who robbed him at knifepoint. According to Sergeant Johnson,

---

[2] The description given to Sergeant Johnson was:  two black men, late teens/early twenties, one tall and slim, very dark skinned, wearing dark clothing; the other slightly shorter, heavyset, stocky, with a scraggly beard with "twisties" in his hair, gray hoodie and dark pants.

2

Grizzle did not identify anyone else as being involved in the robbery, but Grizzle told police that he also recognized one of the other men. Grizzle also identified Smith's knife as the knife employed by appellant during the robbery.

Smith testified for the State in exchange for a guilty plea with leniency. Smith admitted that he was with appellant when appellant robbed Grizzle at knifepoint. Smith stated that, at the time of the robbery, they both had blade pocket knives. Smith further testified that, when they went with Whittington to UMES on March 27, he (Smith) was carrying the same knife that he had the night of the robbery. Smith was not aware whether appellant also had a knife on March 27.

Following the State's case-in-chief, defense counsel moved for acquittal with regard to the weapons charges, arguing that the State failed to negate the penknife exception as required for a conviction under the weapons statute. The court agreed, and granted the motion as to the four weapons charges. Defense counsel then made the argument as to the other charges. He also argued that the evidence was inconsistent. [Footnote omitted].   The court denied the motion with regard to the remaining charges.

Appellant's defense was mistaken identity.   In support of his defense, he presented Tiffany Williams, his friend, as a witness. Williams testified that appellant was with her during the timeframe in which the robbery occurred.

Defense counsel renewed his motion for acquittal at the close of the evidence, without further argument. The court denied his motion.

ECF No. 5-4 at pp. 3-5.

Clarke's motion to sever the weapons charges was denied. *Id.* On November 24, 2008, a jury convicted Clarke of armed robbery, first-degree assault, second-degree assault, reckless endangerment, and theft. *Id.* On the same day, the court sentenced Clarke to serve 15 years in prison. *Id.*

Clarke appealed his judgment of conviction to the Court of Special Appeals of Maryland, raising the following claims:

1.     Did the trial court err in denying Clarke's motion to sever the charges and in admitting evidence relating to his possession of a weapon at the time of his arrest a day after the incident at issue?

2.   Did the victim's in court identification of Tony Smith as Clarke's accomplice violate due process where the consistent and credible testimony of two police officers established that the victim failed to so identify Smith the day after the robbery?

3.   Where the trial court dismissed all the weapons charges against Clarke, thereby establishing that there was insufficient evidence of the use of a dangerous weapon, did the trial court err in failing to also dismiss the charge of armed robbery?

4.   Having dismissed all the weapons charges against Clarke on the grounds that there was insufficient evidence of the use of a dangerous weapon, did the trial court err in allowing into the jury room knives taken from Clarke and Smith upon their arrest the day after the robbery?

ECF 5-2 at p. 2; ECF No. 1 at pp. 2-3.

In an unreported opinion filed on August 19, 2011, the Court of Special Appeals affirmed the judgment of conviction against Clarke. ECF No. 5-4. Clarke then filed a *pro se* petition for a writ of certiorari, asking the Court of Appeals of Maryland to review the following claims:

1.   Did the trial court err in denying Clarke's motion to sever the charges and in admitting evidence relating to his possession of a weapon at the time of his arrest a day after the incident at issue?

2.   Where the trial court dismissed all the weapons charges against Clarke, thereby establishing that there was insufficient evidence of the use of a dangerous weapon, did the trial court err in failing to also dismiss the charge of armed robbery?

ECF No. 5-5. On November 21, 2011, the Court of Appeals denied Clarke's request for further review. *See id.* Clarke's judgment became final for direct appeal purposes on Tuesday, February 21, 2012. *See* Sup. Ct. Rule 13.1 (requiring petition for a writ of certiorari to be filed within 90 days of the date of judgment from which review is sought).

On February 10, 2012, Clarke initiated post-conviction proceedings in the state circuit court. ECF No. 5-1. As amended, litigated, and construed by the circuit court, the petition asserted that trial counsel was ineffective for (1) failing to file a motion for modification of

sentence, (2) failing to cross-examine a witness about a prior statement, (3) failing to request a pre-sentence investigation, (4) failing to challenge the victim's pre-trial identification, and (5) failing to move for a judgment of acquittal on the armed robbery charge. ECF No. 5-6. By statement of reasons filed on December 11, 2013, the court granted Clarke the right to file a belated motion for modification or reduction of sentence, but otherwise denied post-conviction relief. ECF No. 5-7. Clarke filed an application for leave to appeal the circuit court's adverse rulings, asserting that trial counsel was ineffective for (1) failing to cross-examine a witness about a prior statement, and (2) failing to request a pre-sentence investigation. ECF No. 5-8. The Court of Special Appeals summarily denied Clarke's application for leave to appeal in an unreported opinion filed on September 30, 2014. ECF No. 5-9.

Clarke now attacks his convictions on the basis that the trial court erred in denying his motion to sever certain charges. ECF No. 1 at pp. 7-12.       Respondents argue that the claim is procedurally defaulted or, alternatively, that it is not cognizable by way of federal habeas corpus review and otherwise is without merit.  ECF No. 5 at pp. 10-11.

## Analysis

### Threshold Considerations

#### Procedural Default

Respondents contend that Clarke's claim cannot be examined pursuant to the procedural default doctrine, because he failed to fully present the claim in the state courts.  As the Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet

5

the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735
n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).  This argument fails, as Clarke has presented

the claim on direct appeal and thereafter to the Court of Appeals by way of a petition for

certiorari.

Cognizability

Respondents also argue that Clarke's claim is not cognizable.  A writ of habeas corpus

may be granted only for violations of the Constitution or laws of the United States.  *See* 28

U.S.C. § 2254(a).  "'Federal habeas corpus relief does not lie for errors of state law.'" *Estelle v.*

*McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  "[I]t is

not the province of a federal habeas court to reexamine state-court determinations on state-law

questions." *Estelle*, 502 U.S., at 67–68.

Clarke contends that he is entitled to a new trial because the trial court erred in denying

his motion to sever certain charges.  On appeal, Clarke argued that the trial court committed

reversible error when it did not apply the correct legal standard of mutual admissibility for

determining whether to sever the trial of the various charges.  Citing Maryland Rule 4-253(c),

Clarke argued he was entitled to severance because he would be prejudiced by a joint trial of the

charges stemming from the events of the night of the robbery and charges stemming from the

events of the night of his arrest.  ECF No. 5-3 at p. 11.  Clarke recognized that under Maryland

law, the decision to grant or deny a motion for severance usually lies in the trial court's

discretion.  Clarke, however, argued that "discretion in cases such as the present one is trumped

by the non-discretionary requirement that evidence relating to the joined charges must be

mutually admissible," citing Maryland case law.  Clarke also noted that:

6

Evidence relating to the events of the night of Clarke's arrest was other bad acts evidence: Clarke and two companions were walking late at night on the UMES campus, where they were not students; Clarke was carrying an open knife in his pocket; another man had a baseball bat and the third also had a knife; the three spread out in a threatening manner when a lone police officer confronted them. This evidence was of course highly prejudicial given that the flagship offense was robbery of a student at knife point late at night the night before on the UMES campus by two non-students. Such highly prejudicial other bad acts evidence is presumptively inadmissible because it improperly tends to show the criminal propensity of the defendant. Md. Rule 5-404(b).

Of course, such evidence may be admissible if it is not offered to show criminal propensity but is specially relevant for some permissible purpose and its probative value in this regard outweighs its prejudicial effect. *See, e.g., Wynn v. State,* 352 Md. 307, 316, 718 A.2d 508, 592 (1988). The State never proffered any permissible purpose for which this evidence would have been admissible, and the trial court never found any. Instead, the State argued only that "those two counts are linked to these two counts. That's part of the reason that Mr. Clarke was detained. It's also I think it comes in either way that when they patted him down he had an open knife in his pocket whether the charges were there or not." T. 11/24/08 3-4 The trial court denied the motion ultimately because "there is a significant relationship between the last two charges in the criminal information. The other charges in this case the court finds in considering the provision of 5-403 that the relevance outweighs any unfair prejudice." T 11/24/08 5-6.

Had the trial court applied the proper mutual admissibility test, it would have to have granted the motion to sever. The evidence of events on the night of the arrest was not specially relevant to the robbery charges. The usual non-exclusive list of permissible reasons for introducing other bad acts evidence, as spelled out in the rule, is: motive, opportunity, intent, preparation, common scheme or plan, knowledge, identify, and absence of mistake or accident. The only plausible candidate for establishing the special relevance of the evidence of the night of Clarke's arrest is identity. That is, evidence that Clarke and one or more companions were prowling the UMES campus late at night with knives the night following the robbery is arguably relevant to prove that it was Clarke who committed the robbery.

However, any such argument inevitably lapses into an impermissible argument based on criminal propensity unless the pattern of wrongful acts on both occasions is so unique as to constitute a signature. But wandering around a college campus late at night with a knife in one's pocket with a view toward robbing someone is hardly a signature crime. *See, e.g.,Lebedun v. State,* 283 Md. 257, 281, 390 A.2d 64, 75 (1968)(similar robberies of two phannacies in same neighborhood three days apart not signature); *McKnight v. State,* 280

> Md. 604, 612-13, 375 A.2d 551, 556 (1977)(four robberies of single males in same neighborhood, in three cases victim's pants pocket ripped, not signature crime). Accordingly, because the evidence was not mutually admissible, the motion to sever should have been granted. The error was clearly not harmless. Clarke must be awarded a new trial.

ECF No. 5-3 at pp. 12-14. Clearly, Clarke's arguments on appeal centered around state law and procedure. To the extent he cited federal case law in a state habeas corpus proceeding (ECF No. 7 at pp. 2-3), those cases likewise centered on evidentiary and procedural rules, and provide no constitutional basis for relief in the federal habeas corpus context.[3]

Clarke's claim is not cognizable. The court will deny and dismiss the petition. Clarke is not permitted to seek an appeal of this decision as a matter of right; a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied.[4] *See* 28 U.S.C.§ 2253(c)(2).

A separate order follows.

_____
Date

_____
J. Frederick Motz
United States District Judge

_____
[3] Even if the claim were cognizable and not deemed procedurally defaulted, it has no merit and provides no basis for relief under 28 U.S.C. § 2254(d).

[4] Denial of a certificate of appealability in the district court does not preclude petitioner from requesting a certificate of appealability from the appellate court.